STATE OF NORTH CAROLINA v. CLAYTON BULLIN

No. COA01-729

(Filed 18 June 2002)

## 1. Criminal Law— joinder—trafficking in drugs—conspiracy to traffic in drugs—possession of controlled substances

The trial court did not abuse its discretion by joining for trial under N.C.G.S. § 15A-926(a) the three charges against defendant of trafficking in drugs, conspiracy to traffic in drugs, and possession of controlled substances because the charges against defendant stemmed from a series of actions occurring over a short period of time that were part of one general transaction.

## 2. Witnesses— motion to sequester—suppression hearing

The trial court did not abuse its discretion in a trafficking in drugs, conspiracy to traffic in drugs, and possession of controlled substances case by denying defendant's motion to sequester the State's witnesses during the suppression hearing, because: (1) the trial court denied the motion after hearing arguments and making appropriate inquiries of both sides; and (2) any alleged conflicts in paperwork that were claimed by defendant could be illustrated through the documents at issue.

## 3. Evidence— drugs—motion to suppress—probable cause for arrest warrant—protective sweep of residence

The trial court did not err in a trafficking in drugs, conspiracy to traffic in drugs, and possession of controlled substances case by denying defendant's motion to suppress evidence seized at defendant's residence pursuant to his arrest, because: (1) the totality of circumstances reveals that there was probable cause to issue the arrest warrant against defendant including the chain of events, along with the information regarding defendant's reputation and previous involvement with drugs; (2) the officers legally entered defendant's residence pursuant to a valid arrest warrant, and given defendant's actions and his previous involvement with drugs, as well as the dangerous and unpredictable nature of drug trafficking, a prudent officer could reasonably believe that a protective sweep of defendant's home was necessary to make certain that no one else was hiding in the residence; and (3) the search was limited in scope and duration and aimed at ensuring the officers' safety.

**·4. Arrest— delay following arrest—detention pending execution of search warrant**

The trial court did not err in a trafficking in drugs, conspiracy to traffic in drugs, and possession of controlled substances case by concluding that defendant's detention by the arresting officers for almost two hours at his residence pending execution of the search warrant did not violate his rights under N.C.G.S. §§ 15A-501 and 15A-257, because: (1) a two-hour delay at defendant's residence, during which officers asked defendant no questions, was not an unnecessary delay in violation of N.C.G.S. § 15A-501; and (2) defendant failed to preserve the issue of N.C.G.S. § 15A-257 by failing to raise this issue at the trial court and by failing to designate the alleged violation in his assignments of error.

**5. Constitutional Law— effective assistance of counsel— motion for appropriate relief**

The trial court did not err in a trafficking in drugs, conspiracy to traffic in drugs, and possession of controlled substances case by allegedly denying defendant's motion for appropriate relief regarding effective assistance of counsel for failure to perfect defendant's appeal, because: (1) the trial court granted defendant's motion for appropriate relief in part by ordering the return of defendant's files and allowing defendant's new counsel to perfect his appeal; and (2) defendant made no allegations concerning his counsel's performance at trial, and therefore an evidentiary hearing on defense counsel's performance at trial was unnecessary in order to grant defendant's relief.

Appeal by defendant from judgments entered 2 August 2000 by Judge Michael E. Beale in Iredell County Superior Court and from order entered 27 February 2001 by Judge C. Preston Cornelius in Iredell County Superior Court. Heard in the Court of Appeals 16 April 2002.

*Attorney General Roy Cooper, by Assistant Attorney General Judith Tillman, for the State.*

*Deborah P. Brown for defendant appellant.*

TIMMONS-GOODSON, Judge.

On 9 June 1997, a grand jury for Iredell County indicted Clayton Doyle Bullin ("defendant") on charges of trafficking in drugs, con-

STATE v. BULLIN

[150 N.C. App. 631 (2002)]

spiracy to traffic in drugs, and possession of controlled substances with the intent to manufacture, sell or deliver. Defendant thereafter filed a motion to suppress evidence seized by law enforcement officers at defendant's residence. On 2 August 2000, the trial court conducted a hearing regarding defendant's motion to suppress.

At the hearing, the State presented evidence tending to show the following pertinent facts: In September 1996, law enforcement officers in Iredell County began investigating Ralph Jarvis ("Jarvis") for suspected drug trafficking. When the officers confronted Jarvis with evidence of his involvement in drug trafficking, Jarvis agreed to assist the officers in purchasing controlled substances. On 17 October 1996, Jarvis participated in a controlled purchase of cocaine from Jeff Feimster ("Feimster"). During the 17 October 1996 transaction, officers observed a black Chevy Blazer at Feimster's residence. Jarvis subsequently participated in two additional purchases from Feimster. During each transaction, Jarvis was unable to purchase cocaine until the black Chevy Blazer arrived, which Feimster identified as his source for cocaine. Through investigation, officers learned that the Chevy Blazer was registered to Jesse McNeil Hedrick ("Hedrick"), whom they also observed driving the vehicle. Officers subsequently began surveillance of Hedrick's residence.

On 26 November 1996, Jarvis arranged to purchase cocaine from Feimster. When Jarvis arrived at Feimster's residence, he purchased Valium, but Feimster told him that he did not have any cocaine. Feimster informed Jarvis that he had "just called his man" and instructed Jarvis to return in thirty minutes in order to purchase the cocaine. Jarvis left Feimster's residence. Approximately four minutes after Jarvis departed, officers observed Hedrick leave his residence in the Chevy Blazer. Hedrick drove directly to defendant's residence, entered the home, and re-emerged four minutes later. Hedrick then began driving "on the most direct route" to Feimster's residence. When officers following Hedrick noticed him engaging in "unusual" and "erratic driving maneuvers," they activated the vehicle's blue lights and indicated for Hedrick to stop his vehicle. After a brief chase, officers stopped Hedrick and discovered more than twenty-eight grams of cocaine concealed on his person.

Meanwhile, officers investigating defendant learned that he had been previously convicted for felony possession of marijuana and possession with intent to sell marijuana. Officers also learned that one of defendant's family members had contacted the Iredell County Sheriff's Department a few months earlier regarding defendant's

STATE v. BULLIN

[150 N.C. App. 631 (2002)]

involvement in selling controlled substances from his home. Acting on this information, as well as on the evidence obtained by their surveillance of defendant's residence and by Hedrick's arrest, the officers applied for and received a warrant for defendant's arrest.

Detective David Lynn Woodward ("Detective Woodward") of the Statesville Police Department went to defendant's residence and spoke with defendant. When he informed defendant that he had a warrant for his arrest, defendant attempted to close the door, whereupon Detective Woodward and two other officers entered the home, arrested defendant, and made a brief search of the residence in order to ensure that no one else was in the home. During the search, Detective Woodward found a small scale, a knife, a spoon, a clear glass jar containing rice, and clear plastic bags containing cocaine, on the floor of a closet in the master bedroom. The officers made no further search of the residence, but waited for the issuance of a search warrant. After advising defendant of his *Miranda* rights, the officers waited with defendant at his residence until the search warrant was issued. Upon searching defendant's residence, officers found, among other items, "over 50 grams of cocaine; pounds of marijuana; at least five or six different guns, some of them being assault rifles; and at least $22,000 in cash."

Based on the above-stated evidence, the trial court concluded that there was probable cause for the magistrate to issue a warrant for defendant's arrest and for a search of his residence. The trial court further concluded that the officers had the right to conduct a protective sweep of defendant's residence, and that the seizure of items located in the master bedroom closet was reasonable. Finally, the trial court concluded that defendant's detention was reasonable and did not violate his statutory rights. Finding no violation of defendant's constitutional or statutory rights, the trial court denied defendant's motion to suppress evidence found at his residence.

Upon the trial court's denial of his motion to suppress, defendant pled guilty to the charges against him and notified the court of his intention to appeal the denial of his motion. The trial court sentenced defendant to a minimum term of thirty-five (35) months' and a maximum term of forty-two (42) months' imprisonment and fined him $50,000.00 on the charges of trafficking in cocaine and conspiracy to traffic in cocaine. Defendant also received a suspended sentence of six to eight months' imprisonment and a fine of five hundred dollars for the possession of marijuana charge. On 27 February 2001, the trial

STATE v. BULLIN

[150 N.C. App. 631 (2002)]

court entered an order denying in part defendant's motion for appropriate relief, from which order, together with his convictions and resulting sentences, defendant now appeals.

Although defendant designated eighteen assignments of error in the record on appeal, his brief to this Court contains arguments concerning only five assignments of error. Assignments of error in support of which no reason or argument is stated or authority cited are deemed abandoned. *See* N.C.R. App. P. 28(a) (2002). We therefore limit our review to those assignments of error addressed by defendant in his brief.

Defendant argues that the trial court erred in (I) joining the three charges against defendant for trial; (II) denying defendant's motion to sequester witnesses; (III) denying defendant's motion to suppress; (IV) concluding that defendant's statutory rights had not been violated; and (V) denying defendant's motion for appropriate relief. We address these arguments in turn.

## I. Joinder of Charges

[1] Defendant first argues that the trial court erred in joining his charges for trial. Under section 15A-926(a) of our General Statutes, "[t]wo or more offenses may be joined in one pleading or for trial when the offenses . . . are based on the same act or transaction or on a series of acts or transactions connected together or constituting parts of a single scheme or plan." N.C. Gen. Stat. § 15A-926(a) (2001). In determining whether joinder of offenses is appropriate

the trial court must determine whether the offenses are "*so separate in time and place* and *so distinct in circumstances* as to render the consolidation unjust and prejudicial to defendant." Thus, there must be some type of "transactional connection" between the offenses before they may be consolidated for trial. In addition, the trial judge's exercise of discretion in consolidating charges will not be disturbed on appeal absent a showing that the defendant has been denied a fair trial by the order of consolidation.

*State v. Oxendine*, 303 N.C. 235, 240, 278 S.E.2d 200, 203 (1981) (quoting *State v. Johnson*, 280 N.C. 700, 704, 187 S.E.2d 98, 101 (1972)) (citations omitted) (alteration in original).

Defendant argues that the connection between the trafficking in cocaine and conspiracy to traffic in cocaine charges and the posses-

sion of marijuana charge was insufficient to support their consolidation. We disagree.

The charges against defendant stemmed from a series of actions occurring over a short period of time that were part of one general transaction. The evidence showed that law enforcement officers arranged for Jarvis to purchase cocaine from Feimster on 26 November 1996. When Jarvis arrived at the Feimster residence at 2:00 p.m., Feimster informed him that "his man" would not arrive until 2:30 p.m., and Jarvis left approximately five minutes later. Meanwhile, officers watching Hedrick's residence observed him leave his home at 2:09 p.m. and drive directly to defendant's residence, where he remained for only four minutes. When officers subsequently stopped Hedrick's vehicle, they found cocaine hidden on Hedrick's person. The officers then obtained an arrest warrant for defendant, who by 3:30 p.m. was in custody. A search of defendant's residence produced more than fifty grams of cocaine, "pounds" of marijuana, numerous weapons, and $22,000.00 in cash.

Given this evidence, we conclude that the cocaine trafficking and conspiracy charges were not "so separate in time and place and so distinct in circumstances" from the marijuana possession charge "as to render the consolidation unjust and prejudicial to defendant." *Johnson*, 280 N.C. at 704, 187 S.E.2d at 101. As there was a sufficient "transactional connection" between the charged offenses, the trial court did not abuse its discretion in joining the offenses for trial. We therefore overrule defendant's first assignment of error.

## II.  Motion to Sequester

[2] By his second assignment of error, defendant argues that the trial court abused its discretion in denying defendant's motion to sequester the State's witnesses during the suppression hearing. We disagree.

Sequestration serves the dual purpose of acting "as a restraint on witnesses tailoring their testimony to that of earlier witnesses" as well as "detecting testimony that is less than candid." *State v. Harrell*, 67 N.C. App. 57, 64, 312 S.E.2d 230, 236 (1984). When a party moves to sequester witnesses in a criminal case, "the judge may order all or some of the witnesses other than the defendant to remain outside of the courtroom until called to testify[.]" N.C. Gen. Stat. § 15A-1225 (2001). The decision to sequester witnesses rests within the full discretion of the trial court. *See State v. Johnson*, 128 N.C.

App. 361, 370, 496 S.E.2d 805, 811 (1998), *cert. denied*, 350 N.C. 842, 538 S.E.2d 581 (1999).

Defendant acknowledges that we may only review the trial court's denial of his motion to sequester the witnesses for abuse of discretion, but he nevertheless asserts that "the trial court made a perfunctory ruling on the Defendant's Motion to Sequester, without carefully considering the basis for the motion, and denied the motion without weighing the concerns expressed by the Defendant." Defendant's argument is wholly without merit.

The record reveals that the trial court denied defendant's motion to sequester after hearing arguments and making appropriate inquiries of both sides. Further, the sole basis for the motion to sequester advanced by defendant before the trial court was his contention that "there's some conflicts between paperwork which was submitted in discovery between officers' statements, between paperwork that was filed with the [trial court], and that the officers' credibility as to the time in which events occurred in this case may be called into question[.]" We agree with the State that if, in fact, any conflicts in paperwork existed, such discrepancies could be illustrated through the documents at issue. We conclude that the trial court did not abuse its discretion in denying defendant's motion to sequester the witnesses, and we therefore overrule defendant's second assignment of error.

### III. Motion to Suppress

[3] Defendant next argues that there was insufficient evidence to support the issuance of the warrant for his arrest, and that the trial court therefore erred in denying his motion to suppress evidence seized at defendant's residence pursuant to his arrest. Defendant further contends that the trial court erred in denying his motion to suppress on the grounds that the initial search of his residence conducted by officers immediately pursuant to his arrest was unreasonable. Thus, argues defendant, any evidence seized as a result of the unreasonable and therefore illegal search should have been suppressed. We address defendant's arguments in turn.

The trial court's findings of fact following a suppression hearing are conclusive and binding on the appellate courts when supported by competent evidence. *See State v. Brooks*, 337 N.C. 132, 140-41, 446 S.E.2d 579, 585 (1994). While the trial court's factual findings are binding if sustained by the evidence, the court's conclusions based

thereon are reviewable *de novo* on appeal. *See State v. Mahaley*, 332 N.C. 583, 592-93, 423 S.E.2d 58, 64 (1992), *cert. denied*, 513 U.S. 1089, 130 L. Ed. 2d 649 (1995).

In the instant case, the trial court concluded that there was probable cause to support the issuance of the arrest warrant against defendant. Under section 15A-304 of our General Statutes,

> [a] judicial official may issue a warrant for arrest only when he is supplied with sufficient information, supported by oath or affirmation, to make an independent judgment that there is probable cause to believe that a crime has been committed and that the person to be arrested committed it. The information must be shown by one or more of the following:
>
> (1) Affidavit;
>
> (2) Oral testimony under oath or affirmation before the issuing official[.]

N.C. Gen. Stat. § 15A-304(d) (2001). "Probable cause" under this section "refers to the existence of a reasonable suspicion in the mind of a prudent person, considering the facts and circumstances presently known." *State v. Sturdivant*, 304 N.C. 293, 298, 283 S.E.2d 719, 724 (1981). Thus, to establish probable cause, "the evidence need not amount to proof of guilt, or even to prima facie evidence of guilt, but it must be such as would actuate a reasonable man acting in good faith." *State v. Streeter*, 283 N.C. 203, 207, 195 S.E.2d 502, 505 (1973).

> In dealing with probable cause, . . . we deal with probabilities. These are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act . . . . Long before the law of probabilities was articulated as such, practical people formulated certain common-sense conclusions about human behavior; jurors as factfinders are permitted to do the same—and so are law enforcement officers.

*Illinois v. Gates*, 462 U.S. 213, 231-32, 76 L. Ed. 2d 527, 544 (1983) (citations omitted). The standard to be met when considering whether probable cause exists is the totality of the circumstances. *See id.* at 233, 76 L. Ed. 2d at 545.

Examining the totality of the circumstances in the instant case, we conclude that there was probable cause to issue the arrest

warrant against defendant. The evidence before the magistrate who issued the arrest warrant supported the reasonable probability that defendant was involved in drug trafficking. The facts showed that officers had observed Hedrick's vehicle, which Feimster identified as his drug source, on "numerous occasions" at Feimster's residence during drug transactions. On 26 November 1996, immediately prior to a planned drug sale, officers followed Hedrick to defendant's house, whereupon Hedrick entered defendant's residence and remained for only four minutes before proceeding on a route towards Feimster's residence, where Feimster was expecting "his man." When officers stopped Hedrick's vehicle shortly afterwards, they discovered more than twenty-eight grams of cocaine on his person. Further, although Detective Woodward could not specifically recall whether or not he informed the magistrate of defendant's reputation and previous involvement with drugs, he testified that it was his normal practice to do so. The trial court therefore found "that Det. Woodward did inform the magistrate of the Defendant's drug record and reputation in the community as a drug dealer when he applied for the arrest warrant."

We conclude that the above-stated chain of events, as found by the trial court, along with the information regarding defendant's reputation and previous involvement with drugs, supported the reasonable and "common-sense conclusion" that defendant had supplied the drugs that officers found on Hedrick's person. *See Illinois*, 462 U.S. at 231, 76 L. Ed. 2d at 544. The trial court therefore did not err in concluding that there was probable cause to issue the arrest warrant.

Defendant further asserts that the initial search of his residence pursuant to his arrest was unreasonable and therefore unlawful. He contends that the trial court erred in concluding that the arresting officers had the right to conduct a protective sweep of defendant's premises to ensure their safety. Defendant's argument is without merit.

The Fourth Amendment to the United States Constitution protects the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures[.]" U.S. Const. amend. IV. "[A] governmental search and seizure of private property unaccompanied by prior judicial approval in the form of a warrant is *per se* unreasonable unless the search falls within a well-delineated exception to the warrant requirement involving exigent circumstances." *State v. Cooke*, 306 N.C. 132, 135, 291 S.E.2d 618,

620 (1982). Evidence obtained as a result of an unreasonable search and seizure must be excluded. *See State v. Scott*, 343 N.C. 313, 327, 471 S.E.2d 605, 613 (1996).

Protective sweeps of a residence performed by law enforcement officers in conjunction with an in-home arrest are reasonable if there are "articulable facts which, taken together with the rational inferences from those facts, would warrant a reasonably prudent officer in believing that the area to be swept harbors an individual posing a danger to those on the arrest scene." *Maryland v. Buie*, 494 U.S. 325, 334, 108 L. Ed. 2d 276, 286 (1990). The purpose of a protective sweep is to ensure the security of law enforcement officers. *See id.* To that end, the protective sweep must be limited to a cursory inspection of places where a person may hide and last no longer than is necessary to dispel the reasonable suspicion of danger. *See id.* at 335-36, 108 L. Ed. 2d at 287.

In the instant case, officers legally entered defendant's residence pursuant to a valid arrest warrant and performed a protective sweep of the home. The facts known to the officers at the time of defendant's arrest included the following information: (1) defendant had a history of drug dealing; (2) officers had received information that defendant was currently involved in drug trafficking; (3) defendant was a current suspect in a drug trafficking investigation involving numerous individuals; and (4) defendant resisted arrest when informed of the warrant. Given defendant's actions and his previous involvement with drugs, as well as the dangerous and unpredictable nature of drug trafficking, a prudent officer could reasonably believe that under these facts, a protective sweep of defendant's home was necessary to make certain that no one else was hiding in the residence. Furthermore, the evidence shows that the search was limited in scope and duration and aimed at ensuring the officers' safety. The officers involved in the protective sweep testified repeatedly that they searched the premises because they wanted to "make sure no one was there that could hurt . . . [the] officer[s] in that residence." Detective Woodward confirmed that, "[o]nce we were satisfied no one else was in the residence, we went back . . . and waited for the search warrant." Moreover, the officers limited their search to obvious hiding places. Detective Woodward discovered the cocaine and drug paraphernalia seized during the initial search in a walk-in closet, an area where a reasonable officer could expect someone to conceal themselves. *See Maryland*, 494 U.S. at 334, 108 L. Ed. 2d at 286.

Under the facts of the present case, the initial search of defendant's residence was reasonable, and the trial court did not err in so concluding. As probable cause existed to support the issuance of the warrant for defendant's arrest, and because the protective sweep conducted by officers pursuant to defendant's arrest was lawful, the trial court properly denied defendant's motion to suppress evidence seized at his residence. We therefore overrule defendant's third assignment of error.

## IV. Delay Following Arrest

[4] By his fourth assignment of error, defendant contends the trial court erred in concluding that his statutory rights were not violated. Specifically, defendant argues that his detention by the arresting officers for almost two hours at his residence pending execution of the search warrant represented a violation of his rights under section 15A-501 of the North Carolina General Statutes. Section 15A-501 states, in pertinent part, that

Upon the arrest of a person, with or without a warrant, but not necessarily in the order hereinafter listed, a law-enforcement officer:

. . . .

(2) Must, with respect to any person arrested without a warrant and, for purpose of setting bail, with respect to any person arrested upon a warrant or order for arrest, take the person arrested before a judicial official without unnecessary delay.

N.C. Gen. Stat. § 15A-501 (2001). In the case at bar, defendant was taken to a magistrate approximately two hours after he was arrested and advised of his rights. Detective Woodward explained that he did not take defendant to the magistrate immediately after arrest because

[i]t is my experience from being a narcotics officer, when you serve a search warrant with no one home, generally it becomes an issue that officers planted evidence. Allegations of that type were being made. I wanted to not have any problem with that. So we allowed [defendant] to stay with us while we executed a search warrant.

We conclude that a two-hour delay at defendant's residence, during which officers asked defendant no questions, was not an "unnecessary delay" in violation of section 15A-501. *See State v. Littlejohn*, 340

N.C. 750, 758, 459 S.E.2d 629, 634 (1995) (finding no violation in a thirteen-hour delay); *State v. Sings*, 35 N.C. App. 1, 6, 240 S.E.2d 471, 474 (1978) (upholding a seven-hour delay), *disc. review denied*, 294 N.C. 738 (1978).

Defendant additionally contends that the officers violated section 15A-257, which requires an officer "without unnecessary delay" to return to the clerk of the issuing court the search warrant, along with a written inventory of items seized. *See* N.C. Gen. Stat. § 15A-257 (2001). Defendant never raised this issue before the trial court, however, nor did he designate the alleged violation in his assignments of error in the record on appeal. Having failed to preserve this alleged error, defendant has waived his right to argue its merits on appeal. *See* N.C.R. App. P. 10(b)(1) (2002). Accordingly, we do not address this argument and overrule defendant's fourth assignment of error.

## V. Motion For Appropriate Relief

[5] In his final assignment of error, defendant asserts that the trial court erred in denying his motion for appropriate relief. In his motion for appropriate relief, defendant alleged that he had been denied effective assistance of counsel, in that his defense counsel had failed to perfect his appeal. Defendant therefore requested that the trial court vacate defendant's guilty plea and grant him a new trial. Alternatively, defendant asked the court to enter an order allowing new counsel to perfect his appeal. Defendant also requested sanctions against his former counsel for her failure to perfect defendant's appeal.

The trial court heard the matter on 26 February 2001 and found that defendant's former attorney "failed to take any steps to perfect the Defendant's appeal, despite receipts showing that she had been paid to represent the Defendant in his appeal." The trial court therefore granted defendant's motion in part, ordering the return of defendant's files and allowing defendant's new counsel to perfect his appeal to this Court. Defendant now argues that the trial court erred in "denying defendant's motion for appropriate relief due to ineffective assistance of counsel without conducting an evidentiary hearing." We disagree.

First, as noted above, the trial court did not deny defendant's motion for appropriate relief, but rather granted it in part. Further, the basis of defendant's ineffective assistance of counsel claim in his motion for appropriate relief focused exclusively on the failure of

defendant's former counsel to perfect his appeal. Defendant made no allegations, however, concerning his counsel's performance at trial. The trial court therefore found that an evidentiary hearing on defense counsel's performance at trial was unnecessary in order to grant defendant relief. Because the allegations concerning defense counsel's ineffective assistance did not concern her performance at trial, but rather her performance on appeal, defendant's request for a new trial was properly denied by the trial court. The trial court supplied defendant with appropriate relief by allowing new counsel to perfect his present appeal. We therefore overrule defendant's final assignment of error.

In conclusion, we hold that the trial court did not abuse its discretion in joining the charged offenses against defendant, and properly denied defendant's motions to sequester witnesses and to suppress evidence. The trial court also properly denied in part and granted in part defendant's motion for appropriate relief. We therefore affirm the order and judgments of the trial court.

Affirmed.

Judges GREENE and HUNTER concur.