STROUD, Judge.
 

 *787
 
 Defendant Rolando Marrero appeals from the trial court's denial of his motion to suppress. On appeal, defendant argues that the trial court erred and should have granted his motion because officers violated his Fourth Amendment rights when they entered his home. After review, we affirm the decision of the lower court, because defendant was not illegally seized and exigent circumstances justified the officers' warrantless entry into defendant's home.
 

 I. Background
 

 The trial court's findings of fact are not challenged on appeal. On 2 March 2014, at 7:52 p.m., Sergeant Robert Wise of the Charlotte
 
 *788
 
 Mecklenburg Police Department ("CMPD") received a message from a confidential informant of a "home invasion" robbery to take place at 9:00 p.m. that night "at a residence near Milton Road." The informant claimed that he had turned down an offer to join the robbery and that there was a red pickup truck in the driveway of the targeted residence. The informant also alleged that the two suspects had attempted to obtain an AK-47 assault rifle and would be in a small red Hyundai vehicle.
 

 Sergeant Wise was able to confirm that the informant's information was reliable and dispatched officers to monitor the location. Officers identified a particular house on Bell Plaine Drive as the location of the targeted residence. While monitoring, the officers observed a small red Hyundai drive past the house twice. Thereafter, the officers were informed that detectives and other patrol officers were en route to the house to conduct a "knock and talk" to investigate drug activity. The officers on scene were instructed to watch the back of the house and positioned themselves near the intersection of the end of the driveway, the backyard, and back right corner of the residence to ensure no one attempted to enter from the back. At least two officers were in the front of the residence with shotguns pointed downward in "low ready position."
 

 At 9:15 p.m., CMPD detectives Brett Riggs and Messer
 
 [1]
 
 arrived wearing tactical vests with "POLICE" written across them. The other six officers were in full uniform at various locations surrounding the residence, facing away from the house in anticipation of robbery suspects armed with an AK-47. Detective Riggs did not know whether a robbery had already occurred, was in progress, or had not yet occurred. With Detective Messer at his side, Detective Riggs approached defendant's front porch, shined his flashlight into the windows on either side of the front door, and then knocked. In response to a muffled voice, Detective Riggs loudly stated, "Charlotte-Mecklenburg Police Department." After receiving no response, Detective Riggs knocked on the door once more and, after a few moments, defendant opened the door. Only two or three minutes elapsed from the initial knock to the moment defendant opened the door. During the encounter,
 
 *563
 
 Detective Riggs did not see any blue lights emitting from any of the patrol vehicles.
 

 When the door was opened, Detective Riggs immediately smelled unburned, or "green," marijuana from inside the house. Detective
 
 *789
 
 Riggs attempted to explain to defendant that the officers were there to investigate potential drug activity and protect against a potential home invasion, but quickly realized defendant did not speak or understand English. Based on the odor of marijuana, Detective Riggs decided to detain defendant, perform a protective sweep of the residence, and apply for a search warrant.
 

 Two officers conducted a protective sweep of the house to ensure there was no one else inside who could harm them. Soon after, Detectives Riggs and Messer obtained a search warrant and a Spanish-speaking CMPD officer read the warrant to defendant. During the execution of the search warrant, 149 living marijuana plants and 20 pounds of vacuum-sealed marijuana were found in defendant's basement. About 30 pounds of marijuana were seized as a result of the search.
 

 Defendant was indicted on 10 March 2014 for (1) Trafficking in Drugs; (2) Manufacture of a Controlled Substance; (3) Maintaining a Place to Keep Controlled Substances; and (4) Possession of Drug Paraphernalia. Defendant filed a motion to suppress evidence seized at his residence on 24 July 2014, arguing that the evidence was obtained as a result of a non-consensual knock and talk, which amounted to a seizure of defendant in violation of the Fourth Amendment.
 

 Defendant's motion came on for hearing on 12 January 2015. Three of the CMPD officers who were involved in the encounter testified, including Detective Brett Riggs, who was in charge of the operation. After a three-hour evidentiary hearing, the trial court denied defendant's motion. The court's written order included findings that the CMPD were onsite in response to information from a reliable informant that an armed robbery of 30 or more pounds of marijuana was to take place at defendant's residence; Detective Riggs and Detective Messer approached defendant's front door to conduct a "knock and talk"; before knocking Detective Riggs used a flashlight to locate the house number and to determine if anyone inside the house was peering out; "[i]t took the Defendant two to three minutes to answer the door" after Detective Riggs first knocked; as soon as defendant opened the door Detective Riggs smelled a strong odor of marijuana; and "[b]ased upon the odor of marijuana, and the Defendant's inability to understand English," Detective Riggs made the decision to enter and secure the residence. Based on these and other findings, the trial court concluded that no illegal seizure of the defendant occurred during the course of the knock and talk and that exigent circumstances justified CMPD's warrantless entry into defendant's home.
 

 *790
 
 Following the trial court's ruling, defendant pled guilty to the charges against him. Defendant timely reserved his right to appeal and now appeals the denial of his motion to suppress.
 

 II. Motion to Suppress
 

 Defendant's lone issue on appeal is whether the trial court erred in denying his motion to suppress. Defendant claims his Fourth Amendment rights were violated (1) because he was illegally seized inside his home as a result of police coercing him to open his front door, (2) because he did not consent to the police entering his home, and (3) because no exigent circumstances existed to justify a warrantless entry. Therefore, defendant asks this Court to reverse the lower court's order and suppress all evidence obtained as a result of his interaction with CMPD officers.
 

 The standard of review for determining whether a defendant's motion to suppress was properly denied is " 'whether the trial court's findings of fact are supported by the evidence and whether the findings of fact support the conclusions of law.' "
 
 State v. Isenhour,
 

 194 N.C.App. 539
 
 , 541,
 
 670 S.E.2d 264
 
 , 266-67 (2008) (quoting
 
 State v. Cockerham,
 

 155 N.C.App. 729
 
 , 736,
 
 574 S.E.2d 694
 
 , 699 (2003) ). "The trial court's findings of fact are conclusive on appeal if supported by competent evidence, even if the evidence is conflicting."
 
 State v. Blackstock,
 

 165 N.C.App. 50
 
 , 55,
 
 598 S.E.2d 412
 
 , 416 (2004).
 

 *564
 
 Conclusions of law, on the other hand, are fully reviewable on appeal.
 
 Isenhour,
 

 194 N.C.App. at 541
 
 ,
 
 670 S.E.2d at 267
 
 . In carrying out this analysis deference is given to the trial judge as he is in the best position to weigh the evidence.
 
 Blackstock,
 

 165 N.C.App. at 56
 
 ,
 
 598 S.E.2d at 416
 
 .
 

 1. Seizure
 

 Defendant first contends that he was illegally seized as a result of being coerced into opening the front door of his house during a knock and talk carried out by the CMPD. Whether defendant was coerced to open the door for a knock and talk encounter is a novel question for this Court. While there is no case law directly on point, there are many cases involving illegal seizures which guide this decision.
 

 A "knock and talk" is a procedure by which police officers approach a residence and knock on the door to question the occupant, often in an attempt to gain consent to search when no probable cause exists to obtain a warrant.
 
 State v. Smith,
 

 346 N.C. 794
 
 , 800,
 
 488 S.E.2d 210
 
 , 214 (1997). This Court and the North Carolina Supreme Court have recognized the right of police officers to conduct knock and talk investigations,
 
 *791
 
 so long as they do not rise to the level of Fourth Amendment searches.
 
 State v. Wallace,
 

 111 N.C.App. 581
 
 , 585,
 
 433 S.E.2d 238
 
 , 241 (1993) ("Law enforcement officers have the right to approach a person's residence to inquire whether the person is willing to answer questions.");
 
 State v. Grice,
 

 367 N.C. 753
 
 , 762,
 
 767 S.E.2d 312
 
 , 319 (discussing the limiting principle of knock and talk investigations),
 
 cert. denied,
 
 - -- U.S. ----,
 
 135 S.Ct. 2846
 
 ,
 
 192 L.Ed.2d 882
 
 (2015). The Fourth Amendment ensures "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures [.]" U.S. Const. amend. IV. " 'The touchstone of the Fourth Amendment is reasonableness.' "
 
 Grice,
 

 367 N.C. at 756
 
 ,
 
 767 S.E.2d at 315
 
 (quoting
 
 Florida v. Jimeno,
 

 500 U.S. 248
 
 , 250,
 
 111 S.Ct. 1801
 
 ,
 
 114 L.Ed.2d 297
 
 , 302 (1991) ).
 

 The seizure of an individual can take place through the application of physical force or without the officer ever laying his hands on the person seized.
 
 Isenhour,
 

 194 N.C.App. at 543
 
 ,
 
 670 S.E.2d at 267
 
 . An individual is seized by an officer and falls within the protection of the Fourth Amendment when officer conduct " 'would have communicated to a reasonable person that he was not at liberty to ignore the police presence and go about his business.' "
 
 State v. Icard,
 

 363 N.C. 303
 
 , 308,
 
 677 S.E.2d 822
 
 , 826 (2009) (quoting
 
 Florida v. Bostick,
 

 501 U.S. 429
 
 , 437,
 
 111 S.Ct. 2382
 
 ,
 
 115 L.Ed.2d 389
 
 , 400 (1991) ) (quotation marks omitted). In determining whether a reasonable person would feel free to decline an officer's request to communicate, a reviewing court must examine the totality of the circumstances.
 
 Id.
 
 at 308-09,
 
 677 S.E.2d at 826
 
 . This test focuses on the coercive effect of police conduct, taken as a whole.
 
 Id.
 
 at 309,
 
 677 S.E.2d at 826
 
 . Circumstances which might indicate a seizure include, but are not limited to, "the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled."
 
 United States v. Mendenhall,
 

 446 U.S. 544
 
 , 554,
 
 100 S.Ct. 1870
 
 ,
 
 64 L.Ed.2d 497
 
 , 509 (1980).
 

 Defendant's argument relies on a 7th Circuit case,
 
 United States v. Jerez,
 

 108 F.3d 684
 
 (7th Cir.1997), and a comparison between the police conduct in
 
 Jerez
 
 and the conduct of the officers in this case. In
 
 Jerez,
 
 the 7th Circuit held that a Fourth Amendment seizure occurred based upon a knock and talk carried out by police officers at a Wisconsin motel.
 

 Id.
 

 at 692-93
 
 . The officers in
 
 Jerez
 
 performed a knock and talk after 11:00 p.m. at night and persistently knocked on the defendants' motel door for 3 minutes straight.
 

 Id.
 

 at 687
 
 . The officers made verbal demands encouraging the occupants to open the door, knocked on the window of the motel room, and even shined a flashlight through
 
 *792
 
 the window illuminating one of the defendants as he lay in his bed.
 

 Id.
 

 Based on the totality of the circumstances, the 7th Circuit concluded the police conduct during the knock and talk compelled the defendants to open the door and amounted to a Fourth Amendment seizure.
 

 Id.
 

 at 692-93
 
 .
 
 *565
 
 Defendant's reliance on
 
 Jerez
 
 is misplaced. Not only are 7th Circuit opinions not binding on this Court, but the facts of
 
 Jerez
 
 are distinguishable from the facts of the present case. Unlike
 
 Jerez,
 
 neither officer banged on windows, demanded the door be opened, or looked for alternative methods of ensuring defendant was aware of their presence. Here, the officers simply knocked on defendant's front door a few times and stated they were with the CMPD once over the course of the two to three minutes it took defendant to answer the door. Detective Riggs did use a flashlight before knocking, but only to identify the house number and for officer safety, not in an attempt to rouse defendant as the officers in
 
 Jerez.
 

 North Carolina case law regarding "illegal seizures" offers the best instruction for the present case. In
 
 Isenhour,
 
 the defendant appealed the denial of his motion to suppress, claiming he was illegally seized and that the consent he gave officers to search his vehicle was given involuntarily, due to the coercive conduct of those officers.
 
 194 N.C.App. at 541
 
 ,
 
 670 S.E.2d at 266
 
 . The police officers in
 
 Isenhour
 
 parked eight feet behind the defendant's car, approached the defendant while armed and in full uniform, and stood on either side of his car as they spoke with him.
 
 Id.
 
 at 540,
 
 670 S.E.2d at 266
 
 . The defendant eventually consented to a search of his car and was subsequently arrested.
 
 Id.
 
 at 541,
 
 670 S.E.2d at 266
 
 . After conducting a totality of the circumstances review, this Court affirmed the lower court's denial of the defendant's motion to suppress, noting that the defendant's consent was voluntary and that the officers did not create any psychological or physical barriers which would have led a reasonable person to believe that they were not free to leave or terminate the encounter.
 
 Id.
 
 at 544,
 
 670 S.E.2d at 268
 
 .
 

 In contrast, in
 
 Icard,
 
 a police officer pulled behind a parked vehicle, in which the defendant was a passenger, and activated his blue lights.
 
 363 N.C. at 304
 
 ,
 
 677 S.E.2d at 824
 
 . The officer called for back-up and a fellow officer arrived in his patrol car and activated his takedown lights, illuminating the passenger side of the truck.
 
 Id.
 
 at 305,
 
 677 S.E.2d at 824
 
 . During the encounter, one officer rapped on the passenger door of the vehicle.
 

 Id.
 

 After receiving no response the officer opened the door himself and proceeded to ask for the defendant's license and to search her purse.
 

 Id.
 

 The North Carolina Supreme Court concluded the interaction
 
 *793
 
 between the defendant and the officers was non-consensual.
 
 Id.
 
 at 310-11,
 
 677 S.E.2d at 827-28
 
 . The Court noted that the actions of the officers amounted to a show of authority and that a reasonable person in the defendant's position would not have felt free to leave or terminate the encounter.
 

 Id.
 

 Defendant's argument here mirrors the argument made by the defendant in
 
 Isenhour.
 
 Although defendant seemingly consented to the knock and talk by opening his door, he claims his response was involuntary and compelled by coercive police conduct. Here, however, while other officers were on the scene outside the house, there was no evidence that defendant was aware of their presence while he was in the house and before he opened the door. During the knock and talk, Detective Riggs could not see any blue lights from the police cars nearby. Detective Riggs and Detective Messer were the only officers on the defendant's porch during the knock and talk. Unlike in
 
 Icard,
 
 Detective Riggs and Detective Messer did not perform the knock and talk with takedown lights shining into defendant's home. Detective Riggs did use a flashlight, but only to identify the house number and ensure that no one was looking out from inside defendant's house. As in
 
 Icard,
 
 Detective Riggs' first few knocks were ignored, but neither Detective Riggs nor Detective Messer reacted like the officer in
 
 Icard.
 
 They did not attempt to open the front door themselves or demand that the door be opened in an effort to engage with defendant. Instead, they knocked once more and defendant eventually opened the door himself. Similar to
 
 Isenhour,
 
 the officers here did not mount a show of authority or engage in intrusive conduct.
 

 Based on the totality of the circumstances, the trial court correctly concluded that the officers in this case did not act in a physically or verbally threatening manner and that no seizure of defendant occurred during the course of the knock and talk. This conclusion
 
 *566
 
 is supported by the findings of fact in the record. Therefore, the trial court did not err in concluding that the defendant was not illegally seized during the knock and talk procedure carried out by CMPD officers.
 

 2. Exigent Circumstances
 

 Defendant next contends he did not consent to the search of his home by CMPD officers and that no exigent circumstances existed to justify a warrantless entry of his home after he opened the door. The trial court made no findings or conclusions of law regarding a consent theory, as it concluded that probable cause and exigent circumstances were present. When probable cause and exigent circumstances exist, consent is not necessary. Therefore, this Court's review focuses only on
 
 *794
 
 whether exigent circumstances existed to justify the CMPD's warrantless entry of defendant's home.
 

 We note that defendant's only specific argument to any of the trial court's findings of fact is that "the evidence does not support the findings of fact" as to exigent circumstances, but there is no such finding of fact. Defendant argues that the "finding" of exigent circumstances is in error based only upon testimony by Detective Riggs that on the paperwork he completed after the search, he had answered "no" to a question about "whether this raid and search was for exigent circumstances." The trial court made only conclusions of law regarding exigent circumstances. Although Detective Riggs did testify as defendant notes, a witness's statement about a question of law is not binding upon the trial court. In addition, Detective Riggs and the other officers did testify about their safety concerns, particularly in light of the report of a potential armed robbery, and the need to secure any evidence which may be readily disposed during any delay while they obtained a warrant. Defendant does not raise any objection to any of the findings of fact as unsupported by the evidence. We therefore review this argument only to determine if the unchallenged findings of fact support the trial court's conclusion of law.
 

 The Fourth Amendment dictates that "a governmental search and seizure of private property unaccompanied by prior judicial approval in the form of a warrant is
 
 per se
 
 unreasonable unless the search falls within a well-delineated exception to the warrant requirement...."
 
 State v. Cooke,
 

 306 N.C. 132
 
 , 135,
 
 291 S.E.2d 618
 
 , 620 (1982). The existence of probable cause and exigent circumstances is one such exception.
 
 See
 

 State v. Harper,
 

 158 N.C.App. 595
 
 , 602,
 
 582 S.E.2d 62
 
 , 67 (2003) ("Generally, warrantless searches are not allowed absent probable cause and exigent circumstances[.]"). Here, defendant does not challenge the existence of probable cause, so our review focuses solely on whether exigent circumstances were present.
 

 " '[A]n exigent circumstance is found to exist in the presence of an emergency or dangerous situation.' "
 
 State v. Stover,
 

 200 N.C.App. 506
 
 , 511,
 
 685 S.E.2d 127
 
 , 131 (2009) (quoting
 
 State v. Frazier,
 

 142 N.C.App. 361
 
 , 368-69,
 
 542 S.E.2d 682
 
 , 688 (2001) ) (quotation marks omitted). The State has the burden of proving that exigent circumstances necessitated the warrantless entry.
 
 Cooke,
 

 306 N.C. at 135
 
 ,
 
 291 S.E.2d at 620
 
 . Determining whether exigent circumstances exist depends on the totality of the circumstances.
 
 State v. Nowell,
 

 144 N.C.App. 636
 
 , 643,
 
 550 S.E.2d 807
 
 , 812 (2001),
 
 aff'd per curiam,
 

 355 N.C. 273
 
 ,
 
 559 S.E.2d 787
 
 (2002). Factors considered in determining whether exigent circumstances exist include, but are not limited to:
 

 *795
 
 (1) the degree of urgency involved and the time necessary to obtain a warrant; (2) the officer's reasonably objective belief that the contraband is about to be removed or destroyed; (3) the possibility of danger to police guarding the site; (4) information indicating the possessors of the contraband are aware that the police are on their trail; and (5) the ready destructibility of the contraband.
 

 State v. Wallace,
 

 111 N.C.App. at 586
 
 ,
 
 433 S.E.2d at 241-42
 
 (1993). In conducting this analysis, the United States Supreme Court has instructed courts to look to objective factors, rather than subjective intent.
 
 Kentucky v. King,
 

 563 U.S. 452
 
 , 464,
 
 131 S.Ct. 1849
 
 , 1859,
 
 179 L.Ed.2d 865
 
 (2011) (quotations, citations, and italics omitted).
 

 When there is a possibility of danger to police, officers "may conduct a protective sweep of a residence in order to
 
 *567
 
 ensure that their safety is not in jeopardy."
 
 Stover,
 

 200 N.C.App. at 511
 
 ,
 
 685 S.E.2d at 132
 
 . A protective sweep is reasonable if based on " 'articulable facts which, taken together with the rational inferences from those facts, would warrant a reasonably prudent officer in believing that the area to be swept harbors an individual posing a danger to those on the arrest scene.' "
 
 State v. Dial,
 

 228 N.C.App. 83
 
 , 87,
 
 744 S.E.2d 144
 
 , 148 (2013) (quoting
 
 State v. Bullin,
 

 150 N.C.App. 631
 
 , 640,
 
 564 S.E.2d 576
 
 , 583 (2002) ). Furthermore, the North Carolina Supreme Court has acknowledged, "[t]he immediate need to ensure that no one remains in the dwelling preparing to fire a yet unfound weapon ... constitutes an exigent circumstance which makes it reasonable for the officer to conduct a limited, warrantless, protective sweep of the dwelling."
 
 State v. Taylor,
 

 298 N.C. 405
 
 , 417,
 
 259 S.E.2d 502
 
 , 509 (1979).
 

 Here, the trial court found that officers arrived at defendant's residence because of a tip from a reliable informant that "suspects were going to rob a marijuana plantation that was inside a residence house off of Milton Road [.]" The informant explained that "at least one of the suspects would be armed with an AK-47 rifle." The court also found that during the knock and talk Detective Riggs was "unaware as to whether a robbery had occurred, was in progress, or was imminent". In addition, as soon as defendant opened his door Detective Riggs smelled a strong odor of marijuana. Based on the detection of a strong odor of marijuana, and defendant's inability to understand English, Detective Riggs made the decision to enter defendant's home and secure it in preparation for obtaining a search warrant. Given these findings, and the rational inferences which can be drawn from them, an officer in Detective Riggs' position could have reasonably believed that there was an undiscovered dangerous individual within defendant's home with an AK-47. The
 
 *796
 
 CMPD's need to ensure that no one remained in the residence carrying an AK-47 constituted an exigent circumstance.
 
 See
 

 Taylor,
 

 298 N.C. at 417
 
 ,
 
 259 S.E.2d at 509
 
 ("The immediate need to ensure that no one remains in the dwelling preparing to fire a yet unfound weapon ... constitutes an exigent circumstance"). Therefore, Detective Riggs' decision to initiate a protective sweep for officer safety was reasonable.
 

 Furthermore, the ready destructibility of contraband and the belief that contraband might be destroyed have long been recognized as exigencies which justify warrantless seizures/entries.
 
 Grice,
 

 367 N.C. at 763
 
 ,
 
 767 S.E.2d at 320
 
 . In the present case, the trial court found that officers were advised that defendant's residence contained "a marijuana plantation" with "at least 30 pounds of marijuana inside[.]" Additionally, the trial court found that when defendant opened the door the officers immediately smelled a strong odor of marijuana. Given these findings, it is objectively reasonable to conclude that an officer in Detective Riggs' position would have worried that defendant would destroy evidence when he and Detective Messer left the scene to obtain a search warrant, especially given the ready destructibility of marijuana.
 

 Based on the totality of the circumstances, a dangerous and emergent situation existed at the time Detective Riggs initiated a protective sweep of defendant's residence. Therefore, the trial court did not err in concluding that exigent circumstances warranted a protective sweep for officer safety and to ensure defendant or others would not destroy evidence.
 

 III. Conclusion
 

 The lower court did not err in concluding that the knock and talk carried out by CMPD officers did not rise to the level of a Fourth Amendment seizure and that exigent circumstances justified the CMPD's warrantless entry into defendant's home. Its conclusions on these matters were supported by findings of fact in the record and those findings were based on competent evidence, namely the testimony of CMPD officers at the hearing on defendant's motion to suppress. Therefore, we affirm the trial court's denial of defendant's motion to suppress.
 

 AFFIRMED.
 

 Judges ELMORE and DIETZ concur.
 

 [1]
 

 Detective Messer is never identified by his first name in the record on appeal.