**STATE v. DIAL**

[228 N.C. App. 83 (2013)]

---

STATE OF NORTH CAROLINA
v.
PAUL DIAL

No. COA12-1334

Filed 18 June 2013

1. **Firearms and Other Weapons—possession by felon—findings of fact—supported by evidence**

    The trial court's challenged findings of fact in a possession of a firearm by a felon case were supported by competent evidence.

2. **Search and Seizure—reasonable suspicion—residence harbored dangerous individual**

    The trial court did not err in a possession of a firearm by a felon case by denying defendant's motion to suppress the evidence of the firearms that was discovered as a result of a protective sweep of his residence. Deputies had a reasonable suspicion that the residence may have harbored an individual posing a danger to the deputies where defendant took an unusually long time to answer the door at his residence, weapons were known to be inside the residence, and defendant's own actions led him to be arrested in the open doorway.

Appeal by defendant from judgment entered 12 April 2012 by Judge Richard W. Stone in Chatham County Superior Court. Heard in the Court of Appeals 24 April 2013.

*Attorney General Roy Cooper, by Assistant Attorney General Derrick C. Mertz, for the State.*

*Michele Goldman for defendant-appellant.*

STEELMAN, Judge.

Where defendant took an unusually long time to answer the door at his residence, weapons were known to be inside the residence, and defendant's own actions led him to be arrested in the open doorway, deputies had a reasonable belief that the residence may have harbored an individual posing a danger to the deputies. The trial court properly denied defendant's motion to suppress evidence recovered as a result of the deputies' protective sweep.

## I. Factual and Procedural Background

On 20 May 2011, Chris Burger[1] (Burger), a deputy with the Chatham County Sheriff's Office, went to the residence of Paul Dial (defendant) to serve defendant with an order for arrest. Burger had previously served orders for arrest upon defendant at the residence. During the previous encounters, defendant had answered the door promptly when Burger knocked and announced his presence. On 20 May 2011, Burger arrived at defendant's residence and observed a van in the driveway. The van's windows were open and there was a buzzing noise coming from the vehicle consistent with the key being in the ignition in the "on" position. Burger knocked on the front door and immediately heard shuffling on the other side of the door that could have been caused by one or more persons. No one answered the door. For five to ten minutes, Burger continued to knock and announce who he was, called defendant by name, and asked defendant to come outside. No one came to the door. Burger called for backup from his patrol car, indicating that defendant had barricaded himself in the residence and that Burger needed assistance. Burger then used his patrol vehicle PA system to try to get someone to come out of the residence for approximately five minutes. Burger was concerned for his safety because he knew firearms were normally inside the residence and defendant usually responded promptly when Burger knocked and announced his presence.

Deputies Tipton (Tipton) and Miller (Miller) responded to Burger's request for assistance, arrived at the residence, and were briefed on the situation. Burger informed them he believed weapons to be inside the residence and showed them the order for defendant's arrest. The three deputies developed a plan to try to observe who was in the residence.

---

1. We note that in the transcript of the suppression hearing Burger's name is spelled as "Berger." The trial court's order denying defendant's motion to suppress refers to Burger as "Burger."

Tipton and Miller planned to knock on the front and side doors while Burger attempted to look inside the residence through windows. As the deputies approached the residence, the "front door flew open and defendant stepped out." Tipton drew his weapon and gave verbal commands to defendant. Defendant walked down the front steps with his hands raised. Defendant was not resisting arrest, but was not complying with the deputies' instructions. As Burger buckled defendant's knees and cuffed him, Tipton and Miller entered the open front door to perform a protective sweep of the residence. Tipton and Miller considered the open door to be a "fatal funnel" that would provide an assailant inside the residence with a clear shot at the deputies. Acting out of concern for Burger's safety, deputies attempted to clear the residence by making sure there was no one else inside either posing a threat to the deputies or who was injured. The protective sweep lasted approximately thirty seconds. Deputies only inspected areas where a person could have been hiding. While inside the residence, deputies observed ammunition magazines on the kitchen table and firearms inside a room. There was no one else inside the residence. Several hours after the arrest, deputies returned with a search warrant and searched defendant's residence and vehicle.

On 10 October 2011, defendant was indicted for possession of a firearm by a felon. Defendant filed a motion to suppress the evidence that was discovered as a result of the protective sweep of his residence. On 15 March 2012, Judge Allen Baddour denied defendant's motion to suppress. Defendant subsequently pled guilty before Judge Stone to possession of a firearm by a felon, reserving the right to appeal the denial of his motion to suppress. The trial court sentenced defendant to twelve to fifteen months imprisonment. This sentence was suspended and defendant was placed on supervised probation for thirty months.

Defendant appeals.

## II.  Motion to Suppress

In his only argument on appeal, defendant contends that the trial court erred in denying his motion to suppress the evidence of the firearms that was discovered as a result of a protective sweep of his residence. We disagree.

## A.  Standard of Review

Our review of a trial court's denial of a motion to suppress is "strictly limited to determining whether the trial judge's underlying findings of fact are supported by competent evidence, in which event they

STATE v. DIAL

[228 N.C. App. 83 (2013)]

are conclusively binding on appeal, and whether those factual findings in turn support the judge's ultimate conclusions of law." *State v. Cooke*, 306 N.C. 132, 134, 291 S.E.2d 618, 619 (1982).

## B. Challenged Findings of Fact

[1] Defendant challenges three of the trial court's findings of fact from its order denying the motion to suppress.

Defendant first challenges the finding of fact that states Burger "had dealt with defendant on other occasions as well, including making felony drug arrests at the residence." At the suppression hearing, Burger testified that he previously served defendant at least six times with child support papers and that he had "dealings with other individuals" at the residence as well. He further testified that on one of these occasions he arrested an individual for felony possession of cocaine at the residence and characterized the residence as a known "drug house." At the suppression hearing, defendant acknowledged being arrested in 2004 on marijuana charges. This testimony supports the trial court's finding of fact that Burger had previously made felony drug arrests at the residence.

Even assuming *arguendo* that this evidence only supports a finding of fact that Burger made one felony drug arrest at the residence, there is no prejudicial error. Any discrepancy in the number of felony drug arrests, whether it was one or several, is inconsequential to the analysis of whether Tipton and Miller had a reasonable belief that defendant's residence harbored an individual posing a danger to the deputies.

Defendant next challenges the trial court's finding of fact that states "Burger briefed [Tipton and Miller] on the situation, letting them know that he believed there to be weapons inside [defendant's residence]." At the suppression hearing, Tipton and Miller were questioned about their conversation with Burger that occurred shortly after their arrival, what Burger told them, and what they knew about the situation. Tipton and Miller never mentioned in their testimony whether or not Burger informed them that there were weapons inside the residence. Burger testified that he "knew there [were] firearms inside that house" from his previous encounters at the residence, and that he "briefed [Tipton and Miller] on what happened with my prior occasions at the house as far as my dealings with [defendant]. I – for their safety, I informed them there was [sic] weapons to my knowledge inside the house." Defendant contends that Tipton or Miller did not testify that Burger communicated this information to them. However, Burger's testimony, by itself, supports the trial court's finding of fact that he informed Tipton and Miller that he

believed there to be weapons inside the residence. The testimony from Tipton and Miller did not contradict Burger's testimony.

Finally, defendant challenges the competency of evidence supporting the trial court's conclusion of law stating "the arrest occurred [within the fatal funnel] based on the actions of the defendant, not of law enforcement." Defendant characterizes this conclusion as a finding of fact. Assuming *arguendo* that this statement is a finding of fact, there was evidence presented at the suppression hearing that supported it. The evidence was that defendant refused to exit the residence while Burger repeatedly knocked on the door and announced his presence; that after a considerable amount of time, during which two additional deputies arrived, defendant flung the door open, "not just casually [or] slowly;" and that while defendant was not resisting arrest, he was not complying with the deputies' instructions. We hold there was competent evidence to support the trial court's finding of fact that defendant's arrest occurred as it did because of defendant's actions.

### C. Protective Sweep

[2] Defendant contends that the trial court's findings of fact do not support its conclusion of law that Tipton and Miller had a reasonable suspicion, based on articulable facts, that the residence may have harbored an individual posing a danger to the deputies and required a protective sweep.

"A 'protective sweep' is a quick and limited search of premises, incident to an arrest and conducted to protect the safety of police officers or others." *Maryland v. Buie*, 494 U.S. 325, 327, 108 L. Ed. 2d 276, 281 (1990). These sweeps are "reasonable if there are 'articulable facts which, taken together with the rational inferences from those facts, would warrant a reasonably prudent officer in believing that the area to be swept harbors an individual posing a danger to those on the arrest scene.' " *State v. Bullin*, 150 N.C. App. 631, 640, 564 S.E.2d 576, 583 (2002) (quoting *Buie*, 494 U.S. at 334, 108 L. Ed. 2d at 286). Because a protective sweep is aimed at protecting the officers, "[i]t is narrowly confined to a cursory visual inspection of those places in which a person might be hiding." *Buie*, 494 U.S. at 327, 108 L. Ed. 2d at 281. The sweep must also "last no longer than is necessary to dispel the reasonable suspicion of danger and in any event no longer than it takes to complete the arrest and depart the premises." *State v. Wallace*, 111 N.C. App. 581, 588, 433 S.E.2d 238, 242 (1993).

In *Wallace*, we upheld the trial court's conclusion that officers did not have reasonable and articulate suspicion to justify a protective

sweep. *Id.* at 588, 433 S.E.2d at 242-43. In that case, the officers who performed the sweep were at the residence only to gain information and not to make an arrest. *Id.* When the officers arrived at the residence, they encountered no resistance and the defendant answered the door immediately. *Id.* The defendant shut the door to the residence behind him and the door remained shut while the officers questioned the defendant. *Id.* at 583, 433 S.E.2d at 239-40. The officers admitted that they never felt afraid or felt they were in a dangerous situation at any point during the encounter. *Id.* at 588, 433 S.E.2d at 243. The officers heard footsteps and a door shut inside the residence. *Id.* The officers attempted to obtain the defendant's consent to search the residence, but the defendant stated he would not consent until he had time to get rid of the drug paraphernalia and marijuana seeds in the residence. *Id.* at 583, 433 S.E.2d at 240. Thereafter, the officers performed a five-minute protective sweep of the residence. *Id.* at 588, 433 S.E.2d at 243.

The facts of the instant case are distinguishable from those in *Wallace*. The deputies were attempting to serve an order for arrest. Defendant did not immediately respond to Burger and did not respond after ten to fifteen minutes of Burger knocking and announcing his presence. Burger heard shuffling on the other side of the door and he could not determine if it was caused by one or more persons. When Tipton and Miller arrived, they were briefed on the situation, showed the order for defendant's arrest, and informed that Burger believed there to be weapons inside the residence. When the deputies approached the residence, "the front door flew open[,]" defendant stepped out, and walked down the front steps with his hands raised. "As soon as Burger had his hands on defendant," the other two deputies entered the residence and performed a protective sweep, which lasted approximately thirty seconds. While Tipton and Miller's concern that the open door at an unsecured residence was a "fatal funnel" by itself may not have been a sufficient basis for believing there was another individual in the residence that posed a threat, the trial court's findings of fact reveal that there were additional factors present that provided a proper basis for the protective sweep. These include: defendant's unusually long response time and resistance, the known potential threat of weapons inside the residence, shuffling noises that could have indicated more than one person inside the residence, defendant's alarming exit from the residence, and defendant's own actions that led him to be arrested in the open doorway. The trial court's findings of fact indicate that Tipton and Miller acted immediately and responded as soon as Burger was in potential danger. Their sweep was of a very brief duration, and they only looked in places where a person might be hiding. The trial

court's findings of fact support its conclusion of law that Tipton and Miller had a reasonable belief based on specific and articulable facts, that the residence harbored an individual who posed a danger to the safety of the deputies. The trial court's conclusion of law that the "case at bar is factually distinctive from *State v. Wallace*, 111 N.C. App. 581, (1993)" was supported by its findings of fact. The fact that the deputies did not find another person in the residence is in no way determinative of the reasonableness of the protective sweep.

The motion to suppress the evidence was properly denied. This argument is without merit.

AFFIRMED.

Judges CALABRIA and McCULLOUGH concur.