IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA22-363

Filed 18 April 2023

Vance County, Nos. 19 CRS 53569-76, 20 CRS 8

STATE OF NORTH CAROLINA

v.

KEYLAN JOHNSON

Appeal by the State from order entered 9 November 2021 by Judge Josephine Kerr-Davis in Vance County Superior Court. Heard in the Court of Appeals 22 March 2023.

> *Attorney General Joshua H. Stein, by Assistant Attorney General Robert C. Ennis, for the State.*

> *Appellate Defender Glenn Gerding, by Assistant Appellate Defender Brandon Mayes, for defendant-appellee.*

TYSON, Judge.

The State appeals from an order granting Keylan Johnson's ("Defendant") motion to suppress. We reverse and remand.

## I. Background

Jose Martinez was wanted by the Henderson Police Department with an outstanding warrant for disobeying a court order and for assault with a deadly weapon with intent to kill inflicting serious injury. Detective Jeremy Wells and Lieutenant Graham Woodlief observed Martinez seated in the passenger seat of a

black Honda Accord traveling on North Chestnut Street in Henderson. Det. Wells had previously arrested Martinez. The officers knew Martinez was a member of "West End," a "hybrid organization that commits criminal acts." Det. Wells and Lt. Woodlief attempted to follow the black Honda, but lost sight of the vehicle in traffic.

Det. Wells and Lt. Woodlief drove to 555 High Street, the address Martinez had given when he was granted pretrial release. Upon arrival at 555 High Street, Det. Wells and Lt. Woodlief identified a black Honda Accord and another vehicle parked behind the house. The officers also observed Martinez standing in the backyard.

Lt. Woodlief parked near 555 High Street and called the Henderson Police Department Special Response Team ("SRT") for assistance to arrest Martinez. The SRT officers arrived upon the scene fifteen minutes later. By the time the SRT officers were briefed, Martinez was no longer standing outside. The SRT officers set up a perimeter around the house, while Det. Wells approached the door to the residence.

Defendant walked to the door and announced: "It's the police." Defendant turned around and went back into the house. Det. Wells smelled the odor of marijuana coming from inside the residence. Lt. Woodlief also smelled the odor of marijuana coming from the area of the house. The SRT officers ordered everyone to come outside of the house.

Martinez, Defendant, Taylor Bryant, and Kemarus Bryant exited the house

within a few seconds of each other. A different officer detained each individual, placed them in handcuffs, and frisked them for weapons. Kemarus was wearing a "ballistic bulletproof vest." Lt. Woodlief recognized Defendant by his street name "KeeWee." Lt. Woodlief knew all four individuals to be members of West End.

Detective David Ward was assigned to detain Defendant. Defendant walked to where Det. Ward was located, showed his hands were empty, turned around, and put his hands behind his back as instructed. Det. Ward smelled a "[s]trong odor of marijuana" coming from Defendant. Det. Ward then conducted a *Terry* frisk of Defendant. While conducting the *Terry* frisk for officer's safety, Det. Ward was able to see inside of Defendant's open coat pocket, where he observed small, thin, and square white baggies in a folded-over wrapper sitting on top of several other items.

Det. Ward immediately recognized these baggies as consistent with those used in heroin packaging due to his training and experience. Det. Ward did not seize the heroin for safety purposes, but completed the *Terry* frisk, found no weapons, and kept control of Defendant until Lt. Woodlief could take custody of him.

Once Martinez, Defendant, Tyler, and Kemarus were detained and secured, Det. Ward and other SRT officers conducted a protective sweep of the house for officer's safety. The officers entered the house and looked at places "big enough for a person to hide." The sweep was described as being accomplished "very quick." The SRT officers did not locate any other persons inside the house, but observed digital scales and other drug paraphernalia inside the house. These observations were

- 3 -

reported to Lt. Woodlief and Det. Wells.

Before entering for the protective sweep Det. Ward informed Lt. Woodlief of what he believed to be heroin present inside of Defendant's pocket. Lt. Woodlief approached Defendant and also noticed he "smelled like marijuana." Lt. Woodlief searched Defendant and seized: seven dosage units of heroin; three baggies of marijuana; and, almost $2,000 in U.S. currency in denominations of fives, tens, and twenties.

Lt. Woodlief directed Det. Wells to procure a search warrant. Det. Wells drove to his office to draft the search warrant application and affidavit, while Lt. Woodlief and the other officers remained on-site to "freeze" the scene. Det. Wells presented the search warrant and affidavit to a superior court judge, who found probable cause and issued the search warrant for the premises. Det. Wells returned within an hour with the issued warrant.

The officers seized 9.6 grams of raw heroin, 1291 dosage units of heroin, 650 dosage units of heroin, approximately 115.6 grams of marijuana, 40 individual packaged baggies of marijuana, digital scales, plastic baggies, various rounds of ammunition, a Glock handgun box, a Glock magazine, a Springfield 9mm handgun, and a RAS47 semi-automatic rifle.

Defendant was indicted for: (1) five counts of trafficking in more than 28 grams of heroin, a Schedule I controlled substance; (2) two counts of possession with intent to manufacture, sell, or deliver a controlled substance; (3) two counts of

manufacturing a controlled substance; (4) two counts of keeping or maintaining a dwelling or vehicle to keep or sell controlled substances; (5) two counts of possession of a controlled substance; (6) two counts of possession of drug paraphernalia; (7) engaging in a continuing criminal enterprise; and, (8) two counts of possession of a firearm by a felon.

Defendant filed pretrial motions to suppress the evidence seized from his person and from inside the house. Following a hearing, the trial court granted Defendant's motion to suppress in open court and made oral findings and conclusions:

> Court having had the opportunity to hear the arguments of counsel and review the case law as submitted by the defense and the State of North Carolina, the Court is going to grant the defendant's motion. And I will charge the defense with presenting an order for the --the [sic] Court so the Court can sign off on the order.
>
> . . .
>
> [T]hat there was no probable cause as presented by the State or the arresting officers in this case to detain [Defendant]; and that [Defendant] willingly left the residence; that he was searched; that based upon his search, there was no indication that there was - - or there was no concrete evidence that there was drugs on his person. In addition to that, after all four individuals were outside of the residence, there was no information or no indication that there was a need to search the residence, nor was there any information that was presented that there were any information that was presented that [sic] there were additional - - additional persons inside the residence. Based upon those reasons, the Court is going to grant defense counsel's motion.

The trial court made oral findings of fact and conclusions of law as reflected in

the transcript, but did not enter a written order that included the findings of fact and conclusions of law. The next day the trial court entered a Judgment/Order or Other Disposition on an AOC-CR-305 form stating:

> Defendants motion to suppress is granted by the Court. The State gives notice of appeal.
>
> Defendants motion to set bond is allowed by the Court. The Court will set bond in the amount of $250,000 unsecured. As a condition of bond the Defendant is to be placed on electronic house arrest before released [sic]. As a further condition of bond[,] the Defendant is ordered to only leave his residence for medical emergencies for himself or his children and court appearances.
>
> Pending further orders from the Court of Appeals this Court will retain jurisdiction over this case.

The State timely entered notice of appeal. The record on appeal was settled and filed with this Court on 5 May 2022. The State filed its principal brief with this Court on 6 September 2022. On 8 September 2022 Defendant's trial counsel noticed an order originally drafted by him and approved by the State was neither included in the case file nor filed with the Vance County Clerk of Superior Clerk. The trial court signed a copy of this order and filed it with the Vance County Clerk of Superior Court on 3 October 2022.

## II. Jurisdiction

Jurisdiction lies in this Court pursuant to N.C. Gen. Stat. §§ 15A-979(c) and 15A-1445(b) (2021) from the State's appeal of the superior court's order granting Defendant's motion to suppress.

### III. Issue

The State argues the trial court erred in granting Defendant's motion to suppress.

### IV. Standard of Review

"The standard of review for a motion to suppress is whether the trial court's findings of fact are supported by the evidence and whether the findings of fact support the conclusions of law." *State v. Wainwright*, 240 N.C. App. 77, 83, 770 S.E.2d 99, 104 (2015) (citation and internal quotation marks omitted). "[I]n evaluating a trial court's ruling on a motion to suppress . . . the trial court's findings of fact are conclusive on appeal if supported by competent evidence, even if the evidence is conflicting." *State v. Allen*, 197 N.C. App. 208, 210, 676 S.E.2d 519, 521 (2009) (citation and internal quotation marks omitted). "In reviewing the denial of a motion to suppress, we examine the evidence introduced at trial in the light most favorable to the State[.]" *State v. Hunter*, 208 N.C. App. 506, 509, 703 S.E.2d 776, 779 (2010) (citation and internal quotation marks omitted).

Findings of fact not challenged on appeal are deemed supported by competent evidence and are binding upon this Court. *State v. Biber*, 365 N.C. 162, 168, 712 S.E.2d 874, 878 (2011) (citation omitted). "The trial court's conclusions of law [ ] are fully reviewable on appeal" *de novo*. *State v. Hughes*, 353 N.C. 200, 208, 539 S.E.2d 625, 631 (2000).

### V. Jurisdiction of the Trial Court

The State argues in their reply brief the written and entered 3 October 2022 suppression order is a nullity and void because the trial court was divested of jurisdiction upon the State's appeal. The record before this Court shows the State gave oral notice of appeal in open court on 8 November 2021 and filed a written notice of appeal on 16 November 2021. The record was settled and filed with this Court on 5 May 2022. The State filed their principal appellant brief on 6 September 2022. Defendant's appellee brief was filed on 20 January 2023 making extensive references to the purported 3 October 2022 order. The State challenged the jurisdiction of the trial court to enter the 3 October 2022 order in their reply brief.

Defendant asserts "appellants may not raise new arguments for the first time in their reply briefs." *In re Est. of Giddens*, 270 N.C. App. 282, 286, 841 S.E.2d 302, 305 (2020) (citation omitted). Defendant repeatedly referenced the 3 October 2022 suppression order in his appellee brief. The 3 October 2022 suppression order was not entered and filed prior to the record on appeal being settled and filed with this Court on 5 May 2022 or prior to the State filing its principal appellant brief on 6 September 2022.

Rule of Appellate Procedure 28 provides, in relevant part: "Any reply brief which an appellant elects to file *shall be limited to a concise rebuttal of arguments set out in the appellee's brief* and shall not reiterate arguments set forth in the appellant's principal brief." N.C. R. App. P. 28(h) (emphasis supplied). The State can properly challenge the validity of the 3 October 2022 suppression order argued in Defendant's

brief in their reply brief. *Id.*

## VI. Jurisdiction of the Court of Appeals

Our General Statutes provide: "The jurisdiction of the trial court with regard to the case is divested . . . when notice of appeal has been given and the period described in [subsections] (1) and (2) has expired." N.C. Gen. Stat. § 15A-1448(a)(3) (2021). Subsection (1) refers to "the period provided in the rules of appellate procedure for giving notice of appeal," which is 14 days after the entry of the judgment. N.C. Gen. Stat. § 15A-1448(a)(1) (2021); N.C. R. App. P. 4(a)(2). "Therefore, under the plain language of N.C. Gen. Stat. § 15A-1148(a)(3), the trial court has jurisdiction until notice of appeal has been given and 14 days have passed." *State v. Lebeau*, 271 N.C. App. 111, 114, 843 S.E.2d 317, 319-20 (2020).

The trial court was divested of jurisdiction after the State timely gave notice of appeal and fourteen days elapsed. *Id.* By the State invoking and pending this appeal, the trial judge was divested of jurisdiction and is *functus oficio* after the time allowed in the statute has elapsed. *See State v. Davis*, 123 N.C. App. 240, 242, 472 S.E.2d 392, 393 (1996).

Defendant asserts the trial court retains jurisdiction over the record. "[T]he trial court retains jurisdiction [over] matters ancillary to the appeal, including settling the record on appeal." *Id.* (citations omitted). A trial court "has the inherent power and duty to make its records speak the truth[,] . . . to amend its records, correct the mistakes of its clerk or other officers of the court, or to supply defects or

omissions in the record[.]" *State v. Old*, 271 N.C. 341, 343, 156 S.E.2d 756, 757-58 (1967) (citations omitted).

Our Court has held:

> It is the duty of every court to supply the omissions of its officers in recording its proceedings and to see that its record truly sets forth its action in each and every instance; and this it must do upon the application of any person interested, and without regard to its effect upon the rights of parties, or of third persons; and neither is it open to any other tribunal to call in question the propriety of its action or the verity of its records, as made.

*State v. Cannon*, 244 N.C. 399, 403, 94 S.E.2d 339, 342 (1956) (citation omitted).

The State maintains the trial court did not purport to merely "amend its record", but the purported 3 October 2022 order contains wholly new and additional findings of fact and conclusions of law, which were not argued at the hearing and are not reflected in its oral rendition reflected in the transcript. This purported order was not entered and filed until months after the State had filed the settled record on appeal and a month after the State's brief was filed.

It is unnecessary for this Court to square the 3 October order with any prior order to determine if it was to "amend its record" or contains additional findings of fact and conclusions of law. "[O]nce the case has been docketed in the appellate court, the appellate court acquires jurisdiction over the record." *State v. Dixon*, 139 N.C. App. 332, 338, 533 S.E.2d 297, 302 (2000) (citing *Lawing v. Lawing*, 81 N.C. App. 159, 171, 344 S.E.2d 100, 109 (1986)).

The settled record on appeal was filed on 5 May 2022. The trial court did not possess and had long been divested of jurisdiction to "correct the record" on 3 October 2022. The State was prejudiced by the trial court's lack of jurisdiction and error. As appellant, the State was unable to brief all grounds later asserted to allow Defendant's motion.

The trial court did not have jurisdiction to enter the 3 October 2022 suppression order. In light of lack of jurisdiction to enter and in the exercise of our discretion, we deny Defendant's motion to amend the record on appeal to include the 3 October 2022 suppression order, which is a nullity. N.C. Gen. Stat. § 15A-1448(a)(1); N.C. R. App. P. 4(a)(2); *Lebeau*, 271 N.C. App. at 114, 843 S.E.2d at 319-20; *Davis*, 123 N.C. App. at 242, 472 S.E.2d at 393. The purported 3 October 2022 suppression order is vacated.

## VII. Defendant's Motion to Suppress

The State argues the trial court erred in allowing Defendant's motion to suppress and in suppressing evidence found and gathered from Defendant's person and from inside the residence. The State further asserts the trial court erred in concluding the search of the residence was unreasonable.

The Fourth Amendment to the Constitution of the United States provides:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be

searched, and the persons or things to be seized.

U.S. Const. amend. IV.

"The Fourth Amendment protects against governmental invasions into a person's legitimate expectation of privacy, which has two components: (1) the person must have an actual expectation of privacy, and (2) the person's subjective expectation must be one that society deems to be reasonable." *State v. Wiley*, 355 N.C. 592, 602, 565 S.E.2d 22, 32 (2002) (citing *Smith v. Maryland*, 442 U.S. 735, 740, 61 L. Ed. 2d 220, 226-27 (1979)).

The Supreme Court of the United States stated: "The Fourth Amendment proscribes all unreasonable searches and seizures, and it is a cardinal principle that searches conducted outside the judicial process, without prior approval by judge or magistrate, are per se unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions." *United States v. Ross*, 456 U.S. 798, 825, 72 L. Ed. 2d 572, 594 (1982) (citations and internal quotation marks omitted).

The Supreme Court of the United States also stated: "Searches conducted without warrants have been held unlawful notwithstanding facts unquestionably showing probable cause, for the Constitution requires that the deliberate, impartial judgment of a judicial officer . . . be interposed between the citizen and the police[.]" *Katz v. United States*, 389 U.S. 347, 357, 19 L.Ed.2d 576, 585 (1967) (citations and internal quotation marks omitted.

"Generally, a warrant is required for every search and seizure, with particular exceptions." *State v. Armstrong*, 236 N.C. App. 130, 132, 762 S.E.2d 641, 643 (2014) (citation omitted).

## A. Evidence on Defendant's Person

A law enforcement officer in possession of an arrest warrant may arrest the named-individual therein "at any time and at any place within the officer's territorial jurisdiction." N.C. Gen. Stat. § 15A-401(a)(1) (2021). Our General Statutes permit a law enforcement officer with authority to enter a residence when:

> **a.** The officer has in his possession a warrant or order or a copy of the warrant or order for the arrest of a person, provided that an officer may utilize a copy of a warrant or order only if the original warrant or order is in the possession of a member of a law enforcement agency located in the county where the officer is employed and the officer verifies with the agency that the warrant is current and valid; or the officer is authorized to arrest a person without a warrant or order having been issued,
>
> **b.** The officer has reasonable cause to believe the person to be arrested is present, and
>
> **c.** The officer has given, or made reasonable effort to give, notice of his authority and purpose to an occupant thereof, unless there is reasonable cause to believe that the giving of such notice would present a clear danger to human life.

N.C. Gen. Stat. § 15A-401(e)(1)(a)-(c) (2021).

In *Terry v. Ohio*, the Supreme Court of the United States held the brief stop and frisk of an individual did not violate the Fourth Amendment when a "reasonably prudent" law enforcement officer would reasonably suspect the individual was

"armed and thus presented a threat to the officer's safety while [they were] investigating suspicious behavior." *Terry v. Ohio*, 392 U.S. 1, 28, 20 L. Ed. 2d 889, 910 (1968). "The reasonable suspicion standard is a less demanding standard than probable cause and a considerably less [demanding standard] than preponderance of the evidence." *State v. Bullock*, 370 N.C. 256, 258, 805 S.E.2d 671, 674 (2017) (quoting *Illinois v. Wardlow*, 528 U.S. 19, 123, 145 L. Ed. 2d 570, 576 (2000)).

Reasonable suspicion requires "at least a minimal level of objective justification for making the stop." *Wardlow*, 528 U.S. at 123-24, 145 L. Ed. 2d at 576 (citation and internal quotation marks omitted). The law enforcement officer must articulate more than "inchoate and unparticularized suspicion or 'hunch'" of criminal activity to stop the individual. *Id.* (citation omitted). "To meet this standard an officer must be able to point to specific and articulable facts and to rational inferences from those facts justifying the search or seizure at issue." *State v. Wilson*, 371 N.C. 920, 926, 821 S.E.2d 811, 816 (2018) (citation and quotation marks omitted).

Here, officers were in possession of a valid arrest warrant for Martinez for a violent crime involving a weapon, knew Martinez was a member of West End gang, observed him enter the residence, and had observed Kemarus exit the residence wearing a ballistic vest. The officers detained all individuals to protect themselves while securing Martinez and their safety at the scene. In viewing the "totality of the circumstances," Det. Ward relied upon specific and articulable facts, based upon his training, experience, and available information, to form a reasonable belief that

Defendant could be armed. *See State v. Butler*, 331 N.C. 227, 233-34, 415 S.E.2d 719, 722-23 (1992) (Police could form reasonable suspicion to stop a suspect of suspected drug possession and then frisk the suspect based on belief he could be armed).

During the *Terry* frisk for weapons, Det. Ward observed white baggies that were small, thin, and square in a folded-over wrapper sitting on top of other items inside Defendant's pocket. Based on his training and experience Det. Ward believed what he had observed was consistent with packaging for heroin.

Our Supreme Court recently examined a *Terry* frisk of a suspect involved in narcotics distribution, while officers were executing a search warrant of a residence nearby. *State v. Tripp*, 381 N.C. 617, 619-20, 2022-NCSC-78, ¶¶3-8, 873 S.E.2d 298, 302-03 (2022). During the *Terry* frisk the officer observed a plastic bag inside the defendant's pocket and "felt a large lump associated with that" bag. *Id.* at 634, 2022-NCSC-78, ¶44, 873 S.E.2d at 311. The Supreme Court held the search of the defendant and seizure of the narcotics were permitted under the "plain view" doctrine. *Id.*

In *State v. Grice*, 367 N.C. 753, 756-57, 767 S.E.2d 312, 316 (2015), our Supreme Court reviewed and articulated when a warrantless seizure of contraband is reasonable under the Fourth Amendment, applying the "plain-view" doctrine as an exception to the Fourth Amendment's general prohibition against warrantless seizures:

> [A] warrantless seizure of an item may be justified as

> reasonable under the plain view doctrine, so long as three elements are met: First that the officer did not violate the Fourth amendment in arriving at the place from which the evidence could be plainly viewed; second, that the evidence's incriminating character . . . [was] immediately apparent; and third, that the officer had a lawful right of access to the object itself. The North Carolina General Assembly has additionally required that the discovery of evidence in plain view be inadvertent.

*State v. Grice,* 367 N.C. 753, 756-57, 767 S.E.2d 312, 316 (2015) (citations and internal quotation marks omitted).

Det. Ward reasonably and immediately concluded the plastic baggies he inadvertently and "plainly viewed" in Defendant's open pocket may contain illegal narcotics based upon his training and experience. *Id.* The search of Defendant was constitutional and the resulting seizure of the plastic baggies was lawful. The trial court erred in concluding no probable cause existed to detain or search Defendant. The order of the trial court suppressing the items found on Defendant's person is affected by error and is reversed.

**B. Entry Into Residence**

The State argues the trial court erred in concluding the warrantless entry of the officers into the residence was unreasonable and violated the Fourth Amendment. The State asserts the officer's actions were a lawful protective sweep of the residence. The Supreme Court of the United States, the Supreme Court of North Carolina, and this Court have all recognized and affirmed a law enforcement officer's ability to conduct a protective sweep both as an exigent circumstance and for officer's safety

when incident to arrest.

In *Maryland v. Buie*, 494 U.S. 325, 328, 108 L. Ed. 2d 276, 282 (1990) the Supreme Court of the United States examined a protective sweep of a house by police executing an arrest warrant. Police investigating an armed robbery of a pizza restaurant obtained arrest warrants for two suspects and placed one of their houses under surveillance. *Id.* One of the robbers was described as wearing a red running suit. *Id.*

The officers attempted to arrest the defendant at his house. *Id.* The officers executing the arrest warrant went into the residence. An officer was assigned to "freeze" the basement. *Id.* The officer called into the basement for any occupants to come out. After the officer identified himself as a law enforcement officer, the defendant came out from the basement. *Id.* The defendant "was arrested, searched, and handcuffed[.]" *Id.* Another officer entered the basement to make sure no other person was present in the basement. *Id.* Once inside the basement, the officer found a red running suit on the floor and seized it. *Id.*

The Supreme Court in *Buie* articulated requirements for when and how extensive a search police can conduct during a protective sweep. *Id.* at 334, 108 L. Ed. 2d at 286. In the first instance: "as an incident to the arrest the officers could, as a precautionary matter and without probable cause or reasonable suspicion, look in closets and other spaces immediately adjoining the place of arrest from which an attack could be immediately launched." *Id.*

The Supreme Court further held for the second instance: "there must be articulable facts which, taken together with the rational inferences from those facts, would warrant a reasonably prudent officer in believing that the area to be swept harbors an individual posing a danger to those on the arrest scene." *Id.* In this situation officers can search more of the dwelling beyond "space[s] immediately adjoining the place of arrest." *Id.*

However, a protective sweep is not a license for an extensive search of the premises. The Supreme Court also placed limits on the ability of police to conduct a protective sweep holding:

> We should emphasize that such a protective sweep, aimed at protecting the arresting officers, if justified by the circumstances, is nevertheless not a full search of the premises, but may extend only to a cursory inspection of those spaces where a person may be found. The sweep lasts no longer than is necessary to dispel the reasonable suspicion of danger and in any event no longer than it takes to complete the arrest and depart the premises.

*Id.* at 335-36, 108 L. Ed. 2d at 287.

In *State v. Dial*, this Court examined a protective sweep following deputies serving an arrest warrant on a defendant, who came outside the residence as soon as the arresting officers approached. *State v. Dial*, 228 N.C. App. 83, 88, 744 S.E.2d 144, 148 (2013). The deputies feared weapons and possibly another individual may be present inside the residence. *Id.* As soon as the "defendant stepped out, and walked down the front steps with his hands raised" a deputy arrested him, and "the other

two deputies entered the residence and performed a protective sweep, which lasted approximately thirty seconds." *Id.* This Court upheld the protective sweep based on the officers' "reasonable belief based on specific and articulable facts, that the residence harbored an individual who posed a danger to the safety of the deputies." *Id.* at 89, 744 S.E.2d at 148.

In *State v. Wallace*, 111 N.C. App. 581, 588, 433 S.E.2d 238, 242 (1993), this Court applied *Buie* and upheld a trial court's conclusion that officers did not possess reasonable suspicion to justify a protective sweep of a residence. *Buie*, 494 U.S. at 588, 433 S.E.2d at 242-43. The officers did not approach the residence to make an arrest, but only to gain information for an investigation. The defendant voluntarily answered the officers' questions outside of the residence and shut the door behind him when he exited the residence. The door to the residence remained shut during the entire interaction. *Id.* at 583, 433 S.E.2d at 239-40. The officers testified they never were afraid of nor believed they were in a dangerous situation at any time during the questioning. *Id.* at 588, 433 S.E.2d at 243. The officers performed the protective sweep after hearing footsteps behind the door. This Court held the search was an unreasonable inspection of the residence because "the officers candidly admitted they did not feel they were in danger at any time." *Id.*

Prior to *Buie*, our Supreme Court examined a similar issue where officers made a protective sweep of a structure after arresting a suspect located outside in *State v. Taylor*, 298 N.C. 405, 417, 259 S.E.2d 502, 509 (1979). Law enforcement officers were

seeking to apprehend a violent offender for "murder in North Carolina and robbery and maiming in Virginia[.]" *Id.* After arresting the suspect outside of a "shot house", officers remained fearful for their safety, particularly from an ambush from inside the shot house, while they attempted to remove the suspect. *Id.* Our Supreme Court allowed the protective sweep holding: "The immediate need to ensure that no one remains in the dwelling preparing to fire a yet unfound weapon . . . constitutes an exigent circumstance which makes it reasonable for the officer to conduct a limited, warrantless, protective sweep of the dwelling." *Id.*

Here, the State presented uncontroverted evidence to support both bases for the protective sweep. The officers searched beyond the immediate area of the arrest in their sweep. To support such a protective sweep the officers were required to show a reasonable belief based on specific and articulatable facts that the area to be swept might harbor an individual posing danger to the officers on the arrest scene. *Buie*, 494 U.S. at 334, 108 L. Ed. 2d at 286.

The officers' belief here was reasonable given: Martinez's known reputation for violence involving weapons, the individuals were known members of West End gang, an individual emerged from the residence wearing a ballistic vest, and the fact they were unsure whether other individuals remained inside the house following their request for all individuals inside to exit. Once inside, the officers' protective sweep was very brief in duration, and they looked only in places where a person could be hiding. *Id.* at 335-36, 108 L. Ed. 2d at 287.

The trial court misapprehended the law and erred in finding the officers entry into the residence was unreasonable and in finding the officers had no need to search the house.  The protective sweep is allowable because the officers' reasonable belief was based upon specific and articulable facts as a protective sweep and occurred under exigent circumstances. *Id.*  Once inside the residence the officers also observed digital scales and other drug paraphernalia in plain view inside the house.

### C.  Search Warrant

The trial court found the subsequent search warrant sought by Det. Wells to be devoid of probable cause because the officers had no need to protectively sweep the residence.  Defendant maintains the officers' assertion they smelled marijuana outside the residence is insufficient to establish probable cause.

"The Fourth Amendment to the United States Constitution protects individuals 'against unreasonable searches and seizures' and provides that search warrants may only be issued 'upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched and the persons or things to be seized.'" *State v. McKinney*, 361 N.C. 53, 57, 637 S.E.2d 868, 871-72 (2006) (quoting U.S. Const. amend. IV).

The trial court found the search warrant to search the residence was not supported by probable cause.  The State asserts the search warrant was supported and issued based on probable cause from evidence found during the *Terry* frisk of Defendant, items found in plain view during the protective sweep of the residence,

and by the smell of marijuana.

To determine whether probable cause existed to issue a search warrant, a reviewing and an appellate court looks to the "totality of the circumstances." *State v. Arrington*, 311 N.C. 633, 641, 319 S.E.2d 254, 259 (1984); *see Illinois v. Gates*, 462 U.S. 213, 238, 76 L. Ed. 2d 527, 548 (1983). Under the "totality of the circumstances" test, an affidavit submitted to obtain a search warrant provides sufficient probable cause if it provides:

> reasonable cause to believe that the proposed search . . . probably will reveal the presence upon the described premises of the items sought and that those items will aid in the apprehension or conviction of the offender. Probable cause does not mean actual and positive cause nor import absolute certainty.

*Arrington*, 311 N.C. at 636, 319 S.E.2d 256 (citations omitted).

"When reviewing a magistrate's determination of probable cause, this Court must pay great deference and sustain the magistrate's determination if there existed a substantial basis for the magistrate to conclude that articles searched for were probably present." *State v. Hunt*, 150 N.C. App. 101, 105, 562 S.E.2d 567, 600 (2002) (citations omitted).

An application for a search warrant must include: (1) a statement of probable cause indicating the items specified in the application will be found in the place described; and, (2) "one or more affidavits particularly setting forth the facts and circumstances establishing probable cause to believe that the items are in the places

or in the possession of the individuals to be searched[.]" N.C. Gen. Stat. § 15A-244 (2021).

Our Supreme Court has held:

> A grudging or negative attitude by reviewing courts toward warrants is inconsistent with the Fourth Amendment's strong preference for searches conducted pursuant to a warrant; courts should not invalidate warrant[s] by interpreting affidavit[s] in a hypertechnical, rather than commonsense, manner. [T]he resolution of doubtful or marginal cases in this area should be largely determined by the preference to be accorded to warrants.

*State v. Riggs*, 328 N.C. 213, 222, 400 S.E.2d 429, 434-35 (1991) (citations and quotation marks omitted).

Before the trial court and this Court, Defendant asserted the scent of marijuana cannot form the basis of reasonable suspicion and argues the smell is indistinguishable from hemp, which possession thereof has been legal in North Carolina since 2015. *See* An Act to Recognize the Importance and Legitimacy of Industrial Hemp Research, to Provide for Compliance with Portions of the Federal Agricultural Act of 2014, and to Promote Increased Agricultural Employment, S.L. 2015-299, 2015 N.C. Sess. Laws 1483 ("Industrial Hemp Act"). This Court stated the Industrial Hemp Act "legalized the cultivation, processing, and sale of industrial hemp within the state, subject to the oversight of the North Carolina Industrial Hemp Commission." *State v. Parker*, 277 N.C. App. 531, 539, 860 S.E.2d 21, 28, 2021-NCCOA-217, ¶ 27, *disc. review denied*, 378 N.C. 366, 860 S.E.2d 917 (2021).

While industrial hemp may be the same cannabis plant species as marijuana, the "difference between the two substances is that industrial hemp contains very low levels of tetrahydrocannabinol ("THC"), which is the psychoactive ingredient in marijuana." *Id.* at 540, 860 S.E.2d at 28, 2021-NCCOA-217, ¶ 27 (citation omitted).

Federal courts in North Carolina have also examined the impact of the legalization of industrial hemp and the determination of probable cause. The smell of marijuana "alone . . . supports a determination of probable cause, even if some use of industrial hemp products is legal under North Carolina law. This is because *only the probability, and not a prima facie showing, of criminal activity is the standard of probable cause.*" *United States v. Harris*, No. 4:18-CR-57-FL-1, 2019 U.S. Dist. LEXIS 211633, 2019 WL 6704996, at *3 (E.D.N.C. Dec. 9, 2019) (citation and quotation marks omitted) (emphasis supplied).

The United States District Court for the Western District of North Carolina in *United States v. Brooks* also examined a defendant's arguments that the alleged smell of marijuana cannot supply probable cause because it could have been from a legal source, reasoning:

> [Pre]suming, *arguendo*, hemp and marijuana smell "identical," then the presence of hemp does not make all police probable cause searches based on the odor unreasonable. *The law, and the legal landscape on marijuana as a whole, is ever changing but one thing is still true: marijuana is illegal.* To date, even with the social acceptance of marijuana seeming to grow daily, precedent on the plain odor of marijuana giving law enforcement probable cause to search has not been overturned.

*United States v. Brooks*, No.3:19-cr-00211-FDW-DCK, 2021 U.S. Dist. LEXIS 81027, 2021 WL 1668048, at *4 (W.D.N.C. Apr. 28, 2021) (emphasis supplied) (footnotes omitted).

In *State v. Teague*, __ N.C. App. __, __, 2022-NCCOA-600, ¶ 58, 879 S.E.2d 881, 896 (2022), this Court found the reasoning of both *Brooks* and *Harris* persuasive and held: "The passage of the Industrial Hemp Act, in and of itself, did not modify the State's burden of proof at the various stages of our criminal proceeding."

Here, as in *Teague*, the smell of marijuana was not the only basis to provide the officers with probable cause. *Id.* at __ n.6, 2022-NCCOA-600, ¶ 58 n.6 , 879 S.E.2d at 896 n.6 ("Finally, we note that this is not a case where the detectable odor of marijuana was the only suspicious fact concerning the package. The trial court's findings of fact include, *inter alia*, that the seams of the package were sealed, the phone number listed for the recipient on the target package was fictitious, the sender's address and phone number listed on the target package were fictitious, and the actual city from which the target package was sent differed from the city of origin stated on the package. We therefore need not address in this case whether the odor of marijuana alone may give rise to probable cause for the issuance of a search warrant, as the totality of the circumstances here was sufficient to give rise to probable cause. Accordingly, this argument is overruled.").

As held above, drugs were found upon Defendant's person during a lawful *Terry* frisk, and officers saw scales and drug paraphernalia in plain view during the

protective sweep inside the residence. The search warrant was issued by a superior court judge based on probable cause in the affidavit and application after the officers' lawful conduct during the arrest of Defendant and immediately after the arrest. The trial court misapprehended the law in concluding the search warrant was facially invalid and erred in excluding items lawfully seized in the residence.

## VIII.    Conclusion

The trial court erred and prejudiced the State in suppressing the evidence seized from Defendant's person. The trial court further erred in concluding the entry into the residence during the protective sweep was unreasonable and unlawful and excluding evidence from the officers' search of the residence pursuant to a lawful search warrant.

The trial court's ordered suppression is erroneous, prejudicial, and is reversed. This cause is remanded for trial. *It is so ordered.*

REVERSED AND REMANDED.

Judges GRIFFIN and FLOOD concur.